NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0315n.06

Case No. 25-3644

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| DANIEL ROBERTSON, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: SILER, DAVIS, and RITZ, Circuit Judges.

**SILER, Circuit Judge.** Daniel Robertson[1] pleaded guilty to receiving, distributing, and possessing child pornography. The district court imposed a below-Guidelines prison sentence and ordered her to pay $113,500 in restitution to 22 victims. Robertson does not dispute that 18 U.S.C. § 2259 required restitution. She argues only that the court abused its discretion by awarding more than the $3,000 statutory minimum to some victims. Because the district court tied the awards to permissible considerations—including Robertson's distribution conduct and the number of files associated with each victim—we affirm.

**I.**

Investigators identified an IP address in Ravenna, Ohio, suspected of receiving and distributing child pornography through BitTorrent, a peer-to-peer file-sharing program. In August and September 2024, investigators downloaded child-pornography images and videos from that IP

---

[1] Robertson was born male but identifies as female. Below, the parties and the district court used female pronouns to refer to Robinson. This opinion does the same.

address. Investigators later determined that the user of the IP address had been receiving and sharing child pornography as early as October 2023. The IP address was registered to Bryan Foust, and property records showed that the residence was owned by Foust and his fiancée, Robertson.

In December 2024, officers executed a search warrant at the Ravenna residence. They seized several electronic devices, including a cellular phone, a computer, two laptops, and three hard drives. No child pornography was found on Robertson's phone. Forensic review of the other devices revealed 3,019 images and 2,684 videos of child pornography.

Foust denied involvement and suggested Robertson was responsible. Robertson admitted during an interview that she had viewed child pornography since about age 19. She also admitted that she used BitTorrent to download child pornography, preferred material involving prepubescent children, downloaded the material to external hard drives, viewed it on a laptop, and masturbated while doing so. Robertson denied ever having sexual contact with a minor.

A grand jury charged Robertson with receiving and distributing visual depictions of real minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), and possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). Robertson pleaded guilty to both counts without a plea agreement.

The PSR identified 34 victims depicted in Robertson's collection. Probation attached restitution requests and victim-impact statements to the PSR. The victim chart listed the number of images and videos associated with each victim series. Some series involved many files, including Jenny with seven images and 57 videos, Tara with 32 images and 50 videos, Vicky with 21 images and 18 videos, and Sweet White Sugar with 64 images and 10 videos. Other series involved only one image, one video, or a small number of files.

The probation officer calculated an advisory Guidelines range of 151 to 188 months and Count 1 carried a five-year mandatory minimum sentence. Robertson requested a downward variance and asked the court to impose only the $3,000 statutory minimum restitution amount for each eligible victim. At sentencing, the district court varied downward and imposed a 121-month prison sentence, followed by 10 years of supervised release.

The court rejected Robertson's request to limit every award to the $3,000 minimum. It explained that Robertson possessed many videos of multiple victims, had viewed child pornography for a long time, and had distributed material through peer-to-peer file-sharing software. The court described the distribution as "somewhat inactive" but found that Robertson nevertheless made the material available to others and "perpetuat[ed] the market for this stuff." It acknowledged the difficulty of determining Robertson's precise causal role but stated that the number of images and videos "played heavily" into the restitution amounts.

The court considered the restitution requests victim by victim. It denied three requests because those victims had not provided enough information to support the required threshold findings. It awarded restitution to the remaining victims in amounts ranging from $3,000 to $10,000. In total, the court ordered Robertson to pay $113,500 in restitution to 22 victims.

**II.**

We review de novo whether restitution is authorized by statute and the amount of restitution for abuse of discretion. *United States v. Evers*, 669 F.3d 645, 654 (6th Cir. 2012); *United States v. Booher*, No. 23-5108, 2024 WL 2053817, at *3 (6th Cir. May 8, 2024), *cert. denied*, 145 S. Ct. 785 (2024). We reverse only if left with a "definite and firm conviction that the [district] court committed a clear error of judgment." *United States v. Batti*, 631 F.3d 371, 379 (6th Cir. 2011) (quoting *United States v. Hunt*, 521 F.3d 636, 648 (6th Cir. 2008)). "The 'district

court's discretion is ample' in this area, but it must provide an explanation as to its restitution order." *Booher*, 2024 WL 2053817, at *3 (quoting *United States v. Mobasseri*, 828 F. App'x 278, 280 (6th Cir. 2020).

Section 2259 makes restitution mandatory for covered child-exploitation offenses. 18 U.S.C. § 2259(a), (c). For child-pornography trafficking offenses, the statute sets out a two-step process. First, the court determines the victim's full losses incurred, or "reasonably projected to be incurred," from the "trafficking in child pornography depicting the victim." *Id.* § 2259(b)(2)(A). The court then "order[s] restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses," subject to a $3,000 floor. *Id.* § 2259(b)(2)(B).

*Paroline v. United States*, 572 U.S. 434 (2014), supplies the framework for that causal inquiry. Restitution is proper only for losses proximately caused by the defendant's offense. *Id.* at 448. But child-pornography cases often require estimation because each possessor or distributor contributes to a broader, ongoing injury. *Id.* at 456–60. The district court must "assess as best it can from available evidence" the defendant's role in that causal process. *Id.* at 459. *Paroline* further discusses a variety of factors sentencing courts might consider in determining an appropriate restitution award. *Id.* at 460. The factors relevant here include "whether the defendant reproduced or distributed images of the victim," whether the defendant had any connection to the original production, "how many images of the victim the defendant possessed," and other facts bearing on relative causal role. *Id.* The inquiry requires "discretion and sound judgment," not mathematical precision. *Id.* at 459. But the award still must reflect "an application of law, not a decisionmaker's caprice." *Id.* at 462 (citation modified).

4

**III.**

Robertson does not dispute that § 2259 required some restitution. She argues instead that the district court arbitrarily awarded more than the $3,000 minimum to some victims based on the number and type of files associated with each victim series. We disagree.

The court reviewed the PSR, the victim-related materials, and Robertson's sentencing memorandum. The PSR identified 34 victims and listed the file counts for each victim series. Robertson objected to restitution above the $3,000 minimum, but she did not dispute the PSR's file counts or submit evidence contradicting the victims' restitution materials. The district court thus had an undisputed factual basis for considering the number of images and videos associated with each victim.

The court also screened the requests rather than accepting them wholesale. It denied three requests for lack of sufficient information. That approach tracks § 2259's two-step structure: determine the victim's losses, then determine the defendant's relative role in causing them. 18 U.S.C. § 2259(b)(2)(A)–(B). The court followed that sequence by separating supported claims from unsupported ones while assigning restitution amounts.

Robertson argues that her causal role was "too attenuated to support" more than the minimum because she was a downstream consumer. But Robertson pleaded guilty to receiving and distributing child pornography, not just possessing it. She admitted using BitTorrent to download child pornography. And the district court found that Robertson's peer-to-peer software made the material available to others and "perpetuat[ed] the market for this stuff." Distribution is one of the guideposts *Paroline* instructs courts to consider. 572 U.S. at 460.

Robertson responds that this distribution was passive or "inactive." The district court accounted for that point when it described the distribution as "somewhat inactive." But it did not

have to treat inactive distribution as no distribution. *Paroline* asks courts to measure relative responsibility, not to apply an all-or-nothing rule. 572 U.S. at 459–60. A producer or hands-on abuser would have a different causal role. *Id.* at 460. But a defendant who downloads and shares thousands of files through peer-to-peer software still contributes to the ongoing circulation that harms the victims. See *id.* at 457, 459–60.

Nor did the district court err by relying on the number and type of files associated with each victim. *Paroline* expressly permits courts to consider "how many images of the victim the defendant possessed." *Id.* at 460. The district court said the number of images and videos "played heavily" into the awards because it helped quantify the harm tied to Robertson's conduct. That was a permissible consideration, not arbitrary line-drawing.

The awards reflect that the court used the file counts as guideposts. The court awarded the $3,000 minimum to some victims associated with limited material. It awarded $4,000 to several victims associated with small numbers of videos or mixed files. It awarded $7,500 to Sweet White Sugar, a series involving 64 images and 10 videos. And it awarded $10,000 to victims including Jenny, Tara, and Vicky, whose series involved larger numbers of videos, images, or both. In all, the court awarded $113,500 to 22 victims.

Robertson also argues that the district court's explanation was brief. It is true that the court did not walk through every *Paroline* factor for each victim or state each victim's total losses on the record before assigning each amount. A fuller explanation would have been helpful. But *Paroline* does not require mathematical precision. 572 U.S. at 459–60. It requires a reasoned estimate from the available evidence. *Id.* at 459. That is what the district court provided.

This case does not raise the concern that drove *Paroline*. The district court did not impose joint-and-several liability for all losses caused by all offenders. It did not grant every request. And

it did not treat Robertson as a producer or original abuser. It imposed victim-specific awards between $3,000 and $10,000 after considering the victim submissions, Robertson's distribution conduct, and the file counts. That was enough under abuse-of-discretion review.

## IV.

We affirm.